

# ARKANSAS COURT OF APPEALS
## DIVISION II
**No.** CV-16-141

| | |
|---|---|
| JEFFERY PARKER AND SHEILA PARKER<br><br>APPELLANTS<br><br>V.<br><br>JERRY D. PARKER AND SARAH JO PARKER, IN THEIR CAPACITIES AS CO-TRUSTEES OF THE PARKER FAMILY TRUST DATED AUGUST 14, 2014<br><br>APPELLEES | **Opinion Delivered:** April 19, 2017<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FCV-14-0849]<br><br>HONORABLE J. MICHAEL FITZHUGH, JUDGE<br><br>AFFIRMED |

**MIKE MURPHY, Judge**

This appeal is from the decree in a foreclosure action entered in favor of appellees Jerry D. Parker and Sarah Jo Parker as cotrustees of the Parker Family Trust against appellants Jeffery Parker and Sheila Parker.[1] Although appellants argue four points for reversal, the arguments lack merit. Accordingly, we affirm.

On February 3, 2006, appellants executed a note and mortgage in the face amount of $165,000. The note provided for interest-only payments of $859 per month until February 1, 2036, and provided for foreclosure upon default of a regular payment. The note did not specify an interest rate. Payments were due on the third day of each month, without

---

[1]Appellees are the parents of appellant Jeffery Parker.

specification of when they were to begin. The note and mortgage were assigned to the appellees' family trust in August 2014.

On October 8, 2014, appellees filed their foreclosure complaint alleging that appellants were in default under the terms of the note and mortgage on multiple grounds, including being delinquent on the monthly payments, failing to maintain homeowners' insurance coverage listing appellees as loss payees for the property, and allowing state and federal tax liens to be filed against the property. They further alleged that a true and correct copy of the note was attached as an exhibit. However, a blank, undated, and unsigned copy of the note was attached. The copy of the mortgage had been executed and was file stamped as recorded. Appellees sought judgment, both in personam and in rem, in the amount of $165,000 plus $2,578 accrued interest, continuing interest, costs, reasonable attorney's fees, and postjudgment interest.

Appellants responded to the complaint with a motion to dismiss and compulsory counterclaims. They argued that appellees' complaint failed to state sufficient facts upon which relief could be granted. This assertion was based on their claim that the note was usurious because the note failed to specify a rate of interest and the Arkansas Constitution provides that the rate of interest for contracts with no rate specified shall be 6 percent. When the calculations were made of the payments required under the note ($859), the interest rate was 6.25 percent and was, according to appellants, void.

Appellants' counterclaim asserted claims for the torts of conversion and outrage, violation of the Arkansas Deceptive Trade Practices Act (ADTPA), and for damages for violations of Arkansas's usury laws, and unjust enrichment. The ADTPA claim was based

on the allegations that appellant Sheila Parker is a disabled person within the meaning of the ADTPA. Appellees answered the counterclaim.

Following entry of an order denying appellants' motion to dismiss, appellants answered the foreclosure complaint, denying the existence of a legally enforceable note or mortgage. They incorporated their earlier counterclaims by reference. They later amended their counterclaims to specifically include usury.

Appellees filed a motion for summary judgment, attaching the note, mortgage, assignment to their trust, proof regarding insurance coverage, default letter, and tax liens. As mentioned earlier, the copy of the note attached to the motion was unsigned. Appellants responded that appellees failed to produce the original promissory note, and they filed a cross-motion for summary judgment seeking dismissal of the complaint for that failure. Appellees replied that they were *unable* to locate the original promissory note but then attached a copy of the original signed and notarized note they had obtained from appellants. Appellees also submitted affidavits in support of their motion for summary judgment. In those affidavits, appellees stated, among other things, that they had been *able* to locate the original note. Appellants responded to this change of whether appellees were able to locate the promissory note.

The court entered an order finding the word *able* in appellees' affidavits was a scrivener's error and denying both sides' motions for summary judgment. The court also ruled that, although appellees failed to produce the original note, the note could still be enforced pursuant to Arkansas Code Annotated section 4-3-309 (Supp. 2015).

SLIP OPINION

The case proceeded to a two-day bench trial in October 2015. At the conclusion of the trial, the court ruled from the bench. The court repeated its pretrial finding that the rate of interest was not usurious. On appellants' conversion claim, the court found that there was no evidence that appellees exercised dominion or control in violation of appellants' rights because the money they paid appellees was to benefit themselves. On appellants' ADTPA claims, the court found the appellants had not been damaged. The court also found that there was no evidence that appellees used deception, fraud, or false pretenses to persuade appellants to execute the note and mortgage. The court then dismissed appellants' claims with prejudice.

The court then turned to appellees' complaint for foreclosure. The court found that appellants were in default under the terms of the note and mortgage and that the entire principal on the note plus accrued interest was due and owing; it granted appellees a judgment for $165,000 and ordered that the property sold if the judgment was not discharged within ten days. Specifically, the court found that appellants had allowed insurance coverage to lapse for nonpayment of premiums in 2009 and 2011. The court also found that the most recent policy had failed to list appellees as loss payees but that this was cured shortly before trial. The court noted that appellees were charging a lower interest rate than they were receiving on their money at the time of this transaction and that this was pertinent to the issue of fraud or misrepresentation. The court also recounted testimony concerning appellants' payment of property taxes and the filing of federal and state tax liens against the property.

A decree of foreclosure and a separate judgment dismissing appellants' amended counterclaims were entered. The court later awarded appellees attorney's fees of approximately $16,000 and costs of $1,071. An amended decree of foreclosure was entered addressing the affirmative defenses raised by appellants. The court found that there was insufficient evidence to support appellants' affirmative defenses and that the affirmative defenses lacked merit under controlling Arkansas law. This appeal followed.

On appeal, appellants contend that the circuit court erred in (1) denying their motion for summary judgment and instead allowing appellees to submit a second set of affidavits that contradicted the dispositive language in their original affidavits; (2) granting foreclosure because the documents upon which appellees relied lacked essential terms necessary to support a legally enforceable contract; (3) dismissing appellants' conversion counterclaim; and (4) dismissing appellants' claims under the ADTPA.

In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence. *Waddell v. Ferguson Home Builders, LLC*, 2017 Ark. App. 66, ___ S.W.3d ___. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been committed. *Id.*

We need not spend much time with appellants' first point in which they argue that the circuit court erred in not granting their motion for summary judgment because appellees could not produce the original note. Our courts have often written that the denial of a motion for summary judgment is not reviewable on appeal. *Ball v. Foehner*, 326 Ark. 409, 931 S.W.2d 142 (1996); *McElroy v. Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991); *Rick's Pro*

*Dive 'N Ski Shop v. Jennings-Lemon*, 304 Ark. 671, 803 S.W.2d 934 (1991); *Malone & Hyde, Inc. v. West & Co. of LA, Inc.*, 300 Ark. 435, 780 S.W.2d 13 (1989). Such review is not available even after a trial on the merits. *Rick's Pro Dive 'N Ski Shop*, 304 Ark. at 672, 803 S.W.2d at 935.

For their second point, appellants argue that the circuit court erred in granting foreclosure because the note lacked the essential terms necessary to form a legally enforceable contract. Appellants argue that there was no legally enforceable contract because there are several inconsistencies between the mortgage and the note. For example, the mortgage lists the note as having been executed on February 3, 2006, while the signed copy of the note is dated March 1, 2006, and the acknowledgement was taken on November 6, 2007. They also point out that the mortgage describes the note as requiring appellants to pay the principal of $165,000 plus interest, while the note states that appellants will pay "the interest only sum of $859.38, and no principal amount." They also argue that there is no total payoff specified showing how much total money appellants owe or when payments will begin. The circuit court held that both the note and mortgage were valid contracts between the parties and that appellants were in default.

Whether the parties agreed to the terms of a contract is a factual question that is to be determined by the circuit court. *Price v. Willbanks*, 2009 Ark. App. 849, 374 S.W.3d 28. It is well settled that

> [w]hen different instruments are executed at the same time, but are all parts of one transaction, it is the duty of the court to suppose such a priority in the execution of them as shall best effect the intention of the parties. The general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same

transaction, are, in the eye[s] of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance.

*Graves v. Graves*, 7 Ark. App. 202, 204, 646 S.W.2d 26, 28 (1983) (second alteration in original).

The note, while inartfully drawn, clearly sets forth the principal amount of the loan ($165,000), the date on which the payment was due each month (the 3rd of each month beginning February 3, 2006), and a description of the property pledged as security for the note.[2] The interest rate could be calculated from the face of the note and the mortgage. Once the calculations are made, the interest rate is 6.25 percent. Although the promissory note itself does not specify the time for payment, when the note and mortgage are read together, it is clear that the note matures in 2036, or thirty years after the execution. Because we cannot say that the circuit court's finding that the note and mortgage constituted a valid contract is clearly erroneous, *Price*, *supra*, we affirm on this point.

For their third point, appellants argue that the circuit court erred in dismissing their conversion claim. Some additional background is necessary. The mortgage required appellants to make periodic payments to appellees toward the real estate taxes for the property. Appellants' claim for conversion was based on their contention that appellees had converted funds paid to them pursuant to the terms of the note and mortgage. Jeffery Parker testified that he and his father reached an agreement regarding payment of property taxes. According to Jeffery, they agreed that appellants would pay an extra $140.62 per month

---

[2]The mortgage contained both a legal description and the street address of the property. The designation of the premises by street address alone satisfied the statute of frauds' requirement that the contract provide a key to the property's location. *Sloop v. Kiker*, 2016 Ark. App. 125, 484 S.W.3d 696.

toward the property taxes and appellees would remit each payment to the tax collector on a monthly basis. When appellants missed some of the monthly interest payments and appellees sent a letter asking how appellants were going to make their monthly payments, appellants sought to use the money they had paid toward the property taxes to catch up on their delinquent interest payments. This reallocation was sought in a letter dated August 23, 2014.

We hold that the circuit court reached the correct result in finding that appellants did not have a claim for conversion. However, we do so for a different reason. Ordinarily, a debtor has a right to direct the application of his or her payments. *Choctaw, Inc. v. Great Am. Ins. Co.*, 235 Ark. 978, 980, 363 S.W.2d 410, 411 (1963); *Harrison v. First Nat'l Bank*, 117 Ark. 260, 174 S.W. 553 (1915); *Bell v. Radcliff*, 32 Ark. 645 (1878); *see also Gosnell v. Indep. Serv. Fin., Inc.*, 28 Ark. App. 334, 774 S.W.2d 430 (1989). Here, the gist of appellants' complaint is that they made monthly payments to appellees for the property taxes, that appellees held the money in escrow instead of remitting the taxes on a monthly basis, and then refused appellants' request to apply the accumulated funds being held for the taxes to the balance due on the note when appellants became delinquent in their interest-only payments. Appellants waived any right of reallocation because their request was not made when the payments were made. *Bell, supra*. It was only after appellants had missed note payments that they attempted to reallocate funds in an effort to extricate themselves from a default under the note. Moreover, the money was ultimately applied to appellants' taxes as agreed.

Finally, appellants argue that the circuit court erred in dismissing their ADTPA claim. Specifically, they contend that appellees knowingly took advantage of a consumer who is reasonably unable to protect his or her own interest because of physical infirmity. Ark. Code Ann. § 4-88-107(a)(8)(A) (Repl. 2011). Additionally, they claim that appellees violated the catchall provision of this statute by engaging in an unconscionable, false, or deceptive act or practice in business, commerce, or trade. Ark. Code Ann. § 4-88-107(a)(10).

Appellees concede that Sheila Parker meets the ADTPA's definition of "disabled person" but argue that appellants have failed to show a violation of the ADTPA. We agree. The catchall provision of the ADTPA making it unlawful to engage in "any other unconscionable, false, or deceptive act or practice in business, commerce, or trade," Ark. Code Ann. § 4-88-107(a)(10), by its terms requires that the conduct occur in connection with "business, commerce, or trade." The elements of such a cause of action under Ark. Code Ann. § 4–88–113(f) are (1) a deceptive consumer-oriented act or practice which is misleading in a material respect and (2) injury resulting from such act. *See Forever Green Athletic Fields, Inc. v. Lasiter Constr., Inc.*, 2011 Ark. App. 347, 384 S.W.3d 450. There is no showing that appellees were in the "business, commerce, or trade" of making loans. Instead, there was testimony that appellants would not qualify for a conventional loan from a bank and that this was simply a case of parents helping their child.

The circuit court found that appellants were not damaged, and actual damages are required for a private right of action for an ADTPA violation. Ark. Code Ann. § 4-88-113(f); *Baptist Health v. Murphy*, 2010 Ark. 358, 373 S.W.3d 269 (*Baptist III*); *Hamby v. Health Mgmt. Assocs., Inc.*, 2015 Ark. App. 298, 462 S.W.3d 346. A private cause of action

does not arise absent a showing of *both* a violation and resultant damages. *Wallis v. Ford Motor Co.*, 362 Ark. 317, 208 S.W.3d 153 (2005). Appellants do not discuss *how* they were damaged by the alleged ADTPA violations until their reply brief. Thus, it is too late. *Rymor Builders, Inc. v. Tanglewood Plumbing Co.*, 100 Ark. App. 141, 265 S.W.3d 151 (2007).

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Jimmie Carl Bush*, for appellants.

*Walters, Gaston, Allison & Parker*, by: *Veronica L. Bryant*, for appellees.